985 So.2d 821 (2008)
STATE of Louisiana
v.
Andrew BEDOU.
No. 2007-KA-1395.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 2008.
Keva Landrum-Johnson, District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Laura M. Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.)
Judge MAX N. TOBIAS, JR.
On 12 October 2004, in case number 452-609 "L" on the docket of the Orleans *822 Parish Criminal District Court, the defendant, Andrew Bedou ("Bedou"), was charged with four counts of armed robbery (counts 2, 3, 4 and 6), violations of La. R.S. 14:64; one count of armed robbery with a firearm (count 1), a violation of La. R.S. 14:64.3; and one count of attempted armed robbery (count 5), a violation of La. R.S. 14:27 and 14:64. On 14 October 2004, he entered a plea of not guilty to all counts. On 16 December 16, 2004, his counsel filed motions to suppress the identification and for a preliminary hearing. The hearing was continued to 6 January 2005; his counsel filed motions to suppress the evidence, the statement, the identification, and for a preliminary hearing. The hearing was continued to 3 February 2005 when his counsel filed a motion to suppress the identification as to count 6 (armed robbery). The trial court denied the motion to suppress the identification.[1]
Bedou was tried on 20 and 24 June 2005. The jury could not reach a verdict on counts 2 and 3, and a mistrial was declared. Bedou was acquitted on count 4. On 3 August 2005, the state nolle prosequied counts 1, 2, 3, 5 and 6.
On 3 August 2005, Bedou was again charged by bill of information with two of the armed robbery counts that were nolle prosequied on 3 August 2005 involving victims Arthur Brown and Earl Milton. On 16 August 2005, Bedou was arraigned and entered a plea of not guilty to both counts. On 24 and 25 October 2006, he was tried and found guilty as charged on both counts. On 25 September 2007, Bedou's counsel filed a motion for a bond setting, a motion for a new trial, and a motion for an appeal bond. Ultimately, the trial court denied the motion for a new trial and an appeal bond, but set the return date for the appeal for 7 December 2007. On 25 September 2007, Bedou was sentenced to serve ten years at hard labor on each count with credit for time served but without benefit of parole, probation, or suspension of sentence. The sentences were ordered to be served concurrently with each other.

STATEMENT OF THE FACTS
Earl Milton ("Milton") testified that on 6 August 2004 he was residing at 4206 Alford Street, New Orleans, located on the corner of Alford Street and Harrison Avenue. He stated that around 9:00 p.m. he was in his front yard inside his fence preparing for a fishing trip and talking to his neighbor, Lynnette Adams ("Adams"), when he noticed a man riding down the street on a bicycle. He thought it was a neighborhood kid. The man stopped in front of Milton, pointed a gun at him, and asked, "Ya'll all going to give me money. Do I have to shoot you?" Milton replied that he would give him the money in his wallet. The man then told Milton to give him the wallet. Milton complied and threw the wallet over the fence. At this point, Adams realized what was happening and ran into her house to call the police. The man picked up the wallet, removed about $40.00 in cash and rode away. Milton then ran into his house and called 9-1-1 to report the robbery. A few minutes later his wife made a second call. Within twenty-five to thirty minutes the police arrived at the scene. Milton told the officers that the man was riding an "old" model bike but that he could not describe the man's face because he was focused on *823 the gun and believed that he would be shot. He did remember that the man was wearing a light blue cap with a white face on the bill.
On cross-examination, Milton testified that the robbery occurred before it was completely dark, saying that it was "kinda dark like" near his house. He stated that a streetlight was present at the corner of Harrison Avenue and Alford Street, but acknowledged that because of a tree on the median, "it don't really shine ... like to make no extra light there." He did not remember previously testifying that there were no streetlights in the area. However, after reading his prior testimony he admitted that he had testified to that effect.
Adams testified that on 6 August 2004 she resided at 4200 Alford Street which is located facing Harrison Avenue on the corner of Alford and Harrison. She stated that around 9:00 p.m. she went outside to get her cigarettes from her car and began a conversation with her next door neighbor, Milton. While conversing she observed a man riding a silver colored bicycle from Paris Avenue towards St. Bernard Avenue. The man turned right onto Alford Street, passed Milton's home and then made a U-turn back towards Milton's home. She described the street as a "dead-end". She testified that the man said something to Milton, and Milton threw his wallet over the fence towards the man. It was then that she realized Milton was being robbed and saw the man holding a gun. She ran into her home and called 9-1-1 to report the robbery. She described the robber as wearing a light colored shirt, dark pants and a hat. She stated that she could see hair twists protruding from under the hat, which was pulled down right over his eyebrows as if he was trying to cover his face. She described the man as having a dark complexion, thin build, and hollow-like eyes. She testified that the man drew her attention because she knows the residents of her neighborhood and strangers are generally not seen riding down the dead-end street. She stated that she got a good look at the robber's face. After arriving on the scene, the investigating officers transported Adams to the St. Bernard Housing Development at the corner of Milton and Gibson Streets to look at a person of interest who had been detained. The person was shorter, younger, and had a lighter complexion. She told the police that he was not the robber. Adams testified that a few days after the robbery she was shown a six photograph line-up. Adams selected Bedou's photograph (the sixth photograph) and signed the back of it. She positively identified Bedou in the line-up and at trial as the person who robbed Milton. She stated that she was positive of her identification because of Bedou's distinctive features which she described as an elongated face, thick eyebrows, and hollow-like eyes.
On cross-examination, Adams testified that the perpetrator was holding a dark colored gun. She stated that when the officers showed her the photographic line-up she was not aware that they had a suspect. She stated that she took her time before making an identification because she wanted her identification to be correct. She did not remember if the perpetrator had facial hair.
Arthur Brown ("Brown") testified that on 6 August 2004 he was residing at 4136½ Duplessis Street in New Orleans. He stated that at around 9:15 p.m. he was sitting in a lounge chair in the rear of his home facing Harrison Avenue and talking to his neighbor, Joseph Francis ("Francis"), who was sitting on the hood of Brown's car. Brown observed a man coming from the direction of Paris Avenue. The man rode up on a late model dark *824 colored mountain bicycle with chrome gooseneck handlebars, dismounted the bicycle, and laid it down on the ground. The man approached Brown and Francis, suddenly pulled a gun, and pointed it at them. He stated that the man was about three feet from him. The man demanded that Brown give him his money. Brown complied and dropped the wallet to the ground. The man then asked Brown, "where the 20s, where the 20s." Brown told the man that he did not have any 20s and dropped the remaining money from his wallet to the ground. The man picked up the money and rode away in the direction of St. Bernard Avenue and Bayou St. John. Francis, upon realizing what was happening, ran from the scene. Brown testified that during the entire encounter the man was moving around while pointing the gun at him as if he was going to shoot him. Brown described his assailant as wearing dark colored pants, a white jersey-type t-shirt and a hat that resembled a painter's cap with a yellow top and white sides. The hat was pulled down low on his forehead above his eyes. He said that he could see "dreads or something coming out of the hat." He described the assailant's height as around 5'9" to 5'10", with a slender build.
After the man fled the scene, Brown called 9-1-1 to report the robbery. Within minutes the police arrived at Brown's home. Brown gave the officers a description of his assailant. Subsequently, the officers transported Brown to the corner of Gibson and Milton Streets to identify a person of interest that they had detained. Brown told the officers that the person who was detained was not the person who had robbed him.
On 20 August 2004, Brown was shown a photographic line-up by police. He positively identified Bedou's photograph (the sixth photograph) as the man who robbed him at gun point. He signed the back of the photograph, indicating his selection. He also made an in-court identification of Bedou as the robber.
On cross-examination, Brown testified that his friend, Francis, and he were visiting at the rear of his home in the driveway area. He stated that the rear house lights were on so that he could see Bedou approaching him. He testified that once the perpetrator pulled the gun, Francis ran from the scene. He stated that he was no more than three feet from the perpetrator and could see his face and remembered that the robber was not clean-shaven. He testified that the person of interest he was taken to see was too small and too young to be the robber. He stated that he was not informed that the police had a suspect at the time of the photographic line-up. His identification of Bedou was made with care.
On re-direct examination, Brown testified that he was not forced or coerced into making an identification and was not offered anything in exchange for his identification, or was he told which photograph to choose.
Detective Patrick Conaghan testified that on 6 August 2004 he conducted a follow-up investigation of two armed robberies which occurred on Duplessis and Alford Streets. He interviewed the victims and witnesses and documented the information he received in a supplemental police report. He stated that his investigation revealed that the first robbery occurred on Duplessis Street around 9:18 p.m., and the second robbery occurred around 9:20 p.m. on Alford Street (about one-tenth of a mile from the first robbery). In his investigation, he obtained a search warrant for Bedou's mother's house on Louisa Street in New Orleans. The search failed to produce anything of evidentiary value. Subsequently, Bedou *825 was arrested. Detective Conaghan testified that after Bedou was informed of his Miranda rights, he blurted out, "I'm not going to admit that I did it to make your job easier." After his arrest, it was determined that Bedou was residing with his grandmother on Buchanan Street. A subsequent search, pursuant to a warrant, failed to produce anything of evidentiary value.
On cross-examination, Detective Conaghan testified that no handgun, bicycle, or clothing matching the description of that worn by the perpetrator was found as a result of either search. Detective Conaghan testified that Bedou's statement was a spontaneous statement and not a formal statement. Detective Conaghan stated that Bedou consented to a Computerized Voice Stress Analysis (CVSA) test that showed deception in the answers he gave about the robberies. He testified that the witnesses informed him that the perpetrator was a dark skinned black male in his early 20s, approximately 5'10" tall, weighing approximately 140-170 pounds, wearing a white baseball cap, armed with a black semi-automatic handgun, and riding a dark mountain bike. He wore hair twists which protruded from under the sides of the hat.
On re-direct examination, Detective Conaghan testified that the CVSA is used to determine the stress in a person's voice which can detect deception in answers to specific questions. He stated that Bedou showed deception in his answers to questions pertaining to the robberies.
Sergeant Justin Crespo testified that on 6 August 2004 he was assigned to the investigative unit of the Third District of the New Orleans Police Department. On that night he investigated armed robberies on Duplessis and Alford Streets. His investigation resulted in Bedou being developed as the sole suspect. He informed Detectives Conaghan and Darensbourg of his findings so that a follow-up investigation could be conducted.
Detective Alry Darensbourg testified that based on the information given to him by Sergeant Crespo, he obtained a photograph of Bedou and five other photographs of persons with similar facial characteristics as those of Bedou. On 11 August 2004, he went to the homes of Brown and Adams and presented them with the photographic line-up. Bedou's photograph was number six. He stated that he sat with each witness, showed them the six photographs, and asked if they could identify the robber. Both identified photograph number six as that of the robber. They signed the back of the photograph to verify their identifications. He testified that he did not promise anything to the witnesses or suggest, force, or coerce them in anyway to choose Bedou's photograph.
On cross-examination, Detective Darensbourg stated that neither Brown nor Adams knew that a suspect had been developed prior the identification procedure. He testified that Brown carefully reviewed all the photographs before identifying Bedou. Adams immediately identified Bedou as the perpetrator. Neither stated that he or she had seen Bedou prior to the robberies.
Linda Martin-Smith testified that on 6 August 2004 she was working as a 9-1-1 operator for the New Orleans Police Department's Communications Division. Two taped telephone calls were played in open court. She identified them as the 6 August 2004 9-1-1 calls of both Brown and Adams reporting the robberies.
Rosalyn Steele ("Steele"), Bedou's mother, testified on his behalf. She stated that Bedou lived with her at 3033 Louisa Street on 6 August 2004. She described him at that time as nearly bald and having a *826 Manchu-style beard. She stated that her son never wore twists or dreadlocks. She identified two photographs of Bedou taken in July 2004 and testified that in each photograph Bedou was bald and had a beard.
On cross-examination, Steele testified that her mother lived on Buchanan Street in August 2004 but that Bedou did not live with her. She stated that Bedou sometimes lived with his girlfriend, Tonya Raymond, on Tonti Street.
Officer Leonard Standeford was not present to testify. A stipulation was entered into that if Officer Standeford was called to testify that he would testify that the face sheet of the initial police report reflected that the robber had braided hair and was clean-shaven.
Detective Conaghan was recalled to testify by the defense. He stated that he did not know if Brown described the robber as being clean-shaven to the initial investigating officer who wrote the police report. He further testified that no witnesses or victims informed him that the perpetrator had facial hair, but that they did describe the robber as having twists in his hair. He did not know if a physical line-up had been conducted. He stated that Bedou volunteered to take the CVSA test after he was informed that he was being charged with two counts of armed robbery.

ERRORS PATENT
A review of the record for errors patent reveals the court granted Bedou's appeal on 21 September 2007 prior to his sentencing on 25 September 2007. Although an appeal may be taken only from a conviction and sentence, this court has held that it is not necessary to dismiss an appeal taken after conviction but before sentencing because "[d]ismissing the appeal would simply result in a delay of the appellate process and hinder defendant's right to appeal." State v. Coldman, 99-2216, p. 4 (La.App. 4 Cir. 8/30/00), 769 So.2d 131, 134, citing State v. Martin, 483 So.2d 1223, 1225 (La.App. 4 Cir.1986) and State v. Thompson, 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293. This error is harmless.

ASSIGNMENT OF ERROR NUMBER 1:
In his sole assignment of error, Bedou asserts that the state failed to produce sufficient evidence to support his armed robbery convictions. Specifically, he argues that the state failed to prove that he was the person who robbed Brown and Milton at gunpoint.
In State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
See also State v. Sykes, 04-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
Bedou was charged with and convicted of two counts of armed robbery, which is defined by La. R.S. 14:64 as "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
*827 In the case at bar, Bedou does not dispute that the armed robberies occurred. Indeed, the evidence supports a finding of armed robbery because both victims had their wallets and cash taken from them at gunpoint. Bedou argues, however, that the evidence was insufficient to support his conviction because the state did not prove that he was the person who robbed Brown and Milton.
In State v. Holmes, 05-1248, pp. 8-9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162, the court discussed the standard to be used when a defendant disputes his identity as the perpetrator of an offense:
When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. State v. Bright, XXXX-XXXX (La.4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). However, the touchstone of Jackson v. Virginia is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. State v. Hampton, 98-0331 (La.4/23/99); 750 So.2d 867, 880.
Bedou argues that the evidence does not negate the possibility that Brown and Adams misidentified him as the perpetrator. In support, he cites various factors which he maintains show that the identification of him as the robber by Brown and Adams is suspect. Specifically, he argues that his convictions rest solely on the identification testimony of Brown and Adams: No physical evidence was ever seized to link him to the robberies. The lighting conditions were poor. The twists in the robber's hair must have been long enough to be seen in poor lighting. His mother testified that his head was practically bald at that time and that he never wore twists or dread. Detective Conaghan testified that Bedou had short hair at the time of his arrest. Milton was unable to identify the robber even though he stood only three feet from him. He asserts that all this "lack of evidence" taken together should give rise to a reasonable doubt that he perpetrated the two armed robberies.
The jury was aware of all the factors asserted by Bedou. It heard the trial testimony that the robberies were perpetrated within minutes and late in the evening, but that Brown and Adams could still positively identify Bedou and the reasons for the confidence in their identifications. It heard testimony that Milton could not identify the robber but also heard his explanation that he was focused on the gun. Both Brown and Adams positively identified Bedou in a photographic line-up only five days after the robberies. Bedou has not alleged those line-ups were suggestive or unconstitutional. The jury also heard the discrepancies in the physical description of the robber as to hair length, clothing, and weight and the lack of physical evidence. The jury weighed the testimony of the state's witnesses and found them to be credible.
A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 00-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d *828 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. Given the facts of this case, we do not find the jury abused its discretion by finding the identifications of Brown and Adams credible. Thus, sufficient evidence to negate any possibility of misidentification was presented, and the evidence at trial supported the jury's finding that Bedou was the person who armed robbed Brown and Milton. The jury's credibility finding was clearly not contrary to the evidence presented at trial. The assignment of error has no merit.

CONCLUSION
Accordingly, we affirm the defendant's convictions and sentences.
AFFIRMED.
NOTES
[1] The four armed robbery victims were: Henry Grigley, who testified at the 6 January 2005 hearing; Tyrone Horton, who testified at the 3 February 2005 hearing; and Arthur Brown and Earl Milton, victims in the case at bar, who testified at the 16 December 2004 hearing. The 6 January 2005 and 3 February 2005 hearings are irrelevant to the instant appeal.