NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**13-1156**

**STATE OF LOUISIANA**

**VERSUS**

**JOSE LUIS SEGURA, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR129171
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney**
**Cynthia K. Simon**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Brent A. Hawkins**
**Louisiana Appellate Project**
**P. O. Box 3752**
**Lake Charles, LA 70602**
**(337) 502-5146**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jose Luis Segura, Jr.**

**Jose Luis Segura, Jr.**
**Winn Correctional Center**
**P. O. Box 1260**
**Winnfield, LA 71483-1260**

**EZELL, Judge.**

On June 2, 2010, the Defendant, Jose Luis Segura, Jr., was indicted for second degree murder, a violation of La.R.S. 14:30.1. Defendant was arraigned on June 4, 2010, in accordance with La.Code Crim.P. art. 230.1. Jury selection commenced on November 27, 2012, and Defendant was found guilty of the responsive verdict of manslaughter, a violation of La.R.S. 14:31. No motion to reconsider sentence was filed. On April 10, 2013, Defendant's sentencing hearing occurred, and he was sentenced to forty years at hard labor, the maximum sentence for manslaughter.

A motion for appeal was filed on April 22, 2013, and was subsequently granted. Defendant is now before this court asserting one assignment of error: that the evidence presented at trial was insufficient to convict him of manslaughter. We find Defendant's conviction and sentence should be affirmed.

## FACTS

On January 9, 2010, Defendant and the victim, Allen (A.J.) Aucoin Jr., left Defendant's home in the early afternoon. That was the last time the victim was seen alive. Between the early afternoon and around 5:00 p.m., Defendant shot and killed the victim with a .40 caliber gun over a money dispute. The victim's body was found the next day, on January 10, 2010, at Beaver Park in Lafayette, Louisiana. The key to the victim's car was under Defendant's bed, the vehicle was found a block from Defendant's house, and the murder weapon was found in Defendant's home.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant appeals his conviction, arguing that there was insufficient evidence to sustain a responsive verdict of manslaughter.

The general analysis for such a claim is settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The *Jackson* standard of review is codified in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990)). The fact finder's role is to

weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268.

In the current case, no eyewitness identified Defendant. He was convicted on circumstantial evidence, which, he argues, was insufficient. When circumstantial evidence is involved, La.R.S. 15:438 provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Our supreme court has stated:

> Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (alteration in original). Thus, the issue before this court is whether the jury, while viewing the evidence in a light most favorable to the State, could have found that all reasonable hypotheses of innocence were excluded. *State v. Dotson,* 04-1414 (La.App. 3 Cir. 3/2/05), 896 So.2d 310.

Defendant was charged with second degree murder, which is defined in La.R.S. 14:30.1(A)(1) as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific criminal intent may be inferred from the circumstances of the case and the actions of the defendant. *State v. Carroll*, 95-859 (La.App. 3 Cir. 1/31/96), 670 So.2d 286.

3

However, Defendant was found guilty of manslaughter, a responsive verdict to second degree murder. Manslaughter is defined in La.R.S. 14:31(A) as:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or

(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

In *State v. Brown*, 00-1021, p. 6 (La.App. 3 Cir. 1/31/01), 780 So.2d 536, 540, *writ denied*, 01-912 (La. 2/1/02), 807 So.2d 854, this court noted:

As explained by the Louisiana Supreme Court in *State v. Snyder*, 98-1078 (La.4/14/99), 750 So.2d 832, "sudden passion" and "heat of blood" are not elements of manslaughter. "Rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed in the absence of these factors." *Id.* at p. 4, 837-38. If a defendant establishes, by a preponderance of the evidence, the presence of these mitigating factors, he or she is entitled to a verdict of manslaughter. *Id. See also State v. Lombard*, 486 So.2d 106 (La.1986).

*See also State v. Johnson*, 06-623 (La.App. 3 Cir. 11/2/06), 941 So.2d 696, *writ denied*, 06-3024 (La. 9/14/07), 963 So.2d 995.

Defendant presents a "two-pronged argument." His first argument is that "the State failed to prove, beyond a reasonable doubt, [Defendant] was the person who killed" the victim, Allen Aucoin, Jr. His second argument is that "insufficient

4

evidence was presented at trial that would have allowed a jury to conclude [Defendant] acted in sudden passion or heat of blood at the time Aucoin was killed." In support of the first prong of his argument, Defendant argues that because there were no eyewitnesses to the murder, the State did not prove beyond a reasonable doubt that he killed the victim.

Addressing the State's burden of proving Defendant was the shooter in a circumstantial evidence case, this court, in a case where identity of an armed robber was an issue, previously stated:

> When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. *State v. Bright*, 1998-0398 (La. 4/11/00); 776 So.2d 1134, 1147. . . However, the touchstone of *Jackson v. Virginia*, is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988).

*State v. Perry*, 08-1304, pp. 5-6 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, 346, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352 (quoting *State v. Bedou*, 07-1395, p. 11 (La.App. 4 Cir. 5/14/08), 985 So.2d 821, 827).

In this case, State witnesses testified that Defendant and the victim were meeting on January 9, 2010. The first to testify was the victim's mother, who had spoken to him around 2:00 p.m. on January 9, 2010. She further testified that she was babysitting the victim's child while he went to speak with Defendant about a forged check. Next, the victim's girlfriend testified that he had lunch at the restaurant where she worked and told her that he was going to meet his boss in regards to a bounced check.

5

Defendant's live-in girlfriend, April Kunath, testified that on January 9, 2010, she witnessed Defendant enter the victim's white Suburban vehicle with the victim driving. She also testified that she was aware of a forged-check incident that possibly involved Defendant because the check had been stolen from her ex-father-in-law.

Lafayette Police Department Detective, Brad Robin, investigated the murder. Detective Robin testified that Defendant initially denied seeing the victim on January 9, 2010, but later admitted to being with him. The following colloquy transpired at trial with the assistant district attorney:

BY MS. SIMON:

Detective, once the defendant waived his rights and agreed to speak with you, did you gain any – did you talk to him about this incident at Beaver Park?

A: Yes.

Q: And what did he originally tell you?

A: His original statement was that he had not seen the victim since Wednesday.

Q: So Mr. Segura admitted to knowing A.J.?

A: Yes.

Q: And after saying that he had not seen the victim since Wednesday, what happened next in that interview?

A: We spoke with Ms. Maxwell, which is Mr. Segura's girlfriend, and she stated that she had seen A.J.'s vehicle, which she figured was A.J., pick up Mr. Segura on that Saturday at approximately 1:15 or 1:30, and then returned around 5:00. So we then spoke to him and told him that we know that he was with him and that's when he stated that, yes, that is correct. And, basically, stated that he and A.J. left the residence at 906 Center Street and Mr. Segura was dropped off on – somewhere's on West Pinhook to do a job for a plumbing company for Mr. Marvin Ellis.

Q: So he admitted eventually to being with the victim on January 9th, 2010?

A: Yes.

Detective Robin executed a search warrant at Defendant's residence. The police officers' execution of the search warrant uncovered, among other items, "one black and grey binder containing keys with one spent .40 caliber casing and various papers that was located in the bedroom." The binder was found beneath Defendant's bed. A set of keys (that matched the keychain described by the victim's family) were in the binder.

Upon leaving the residence, Detective Robin and other officers noticed "a white Suburban parked approximately a block from Mr. Segura's residence. . .It had the same plate as the victim's vehicle." The detective gave the key from the binder to the crime scene investigator, and the investigator subsequently opened the locked vehicle with the key. The DNA technical leader who testified found that Defendant's DNA matched the profile from the inside driver door handle swab at twelve out of sixteen DNA markers. This allowed him to conclude: "to a reasonable degree of scientific certainty that Jose Segura is the source of that major contributor DNA profile found on that inside driver door pull handle."

Defendant's girlfriend further testified that she owned a firearm that she used professionally as a contract security guard for the federal government. She confirmed that the firearm was accessible even when it was in its case. This gun was found to be the murder weapon by an Acadiana Criminalistics Lab technician who testified. In regards to DNA on the firearm, The DNA technical leader also testified that:

Again, we had a mixed DNA profile of at least two (2) individuals, most likely one major DNA contributor and at least two

(2) minor DNA contributors that were obtained from the pistol slide swab. Mr. Segura cannot be excluded as a potential source of the major contributor DNA profile.

Now the probability of selecting someone at random with that same major contributor profile would be approximately one in sixty-seven billion.

Defendant testified in this case. He admitted to three felony convictions, one which was for forgery. He testified that he planned to start a business and asked the victim to work with him. Defendant then testified that they planned to get the start-up capital by selling drugs. Defendant continued that they were going to meet someone named Richard to buy drugs. Defendant testified that the victim asked him to take April's gun, accompanied him to Beaver Park, and then the victim went into the bathroom with a man from another vehicle, but the victim did not come out. Defendant then stated:

A.J. was on the ground and the gun was on the side. At that point in time I didn't know that the gun was used to shoot him.

. . . .

I'm sorry. So at that time I didn't know that that was the gun that shot him. I picked up the gun right away. And I said, "A.J." and I kicked him, you know, prodding him with my foot to get him to respond, to move.

. . . .

I jumped in A.J.'s truck and I left.

The jury heard all of this testimony and viewed the evidence in the record. We find that the record sufficiently reflects that the State satisfied it burden of proving the elements of the crime beyond a reasonable doubt.

Defendant also argues that the "State provided insufficient evidence that would have allowed a jury to conclude [Defendant] was guilty of manslaughter." In support of his argument, Defendant states "there is no testimony or evidence

8

otherwise, whatsoever, that when [Defendant] allegedly killed Aucoin that any sudden passion or heated blood existed."

The trial court explained the elements of the offense charged and the elements of the lesser offenses to the jury. He also explained how the jury should consider the responsive verdicts.

As noted above, sudden passion or heated blood are not elements of manslaughter but mitigation considerations. *Brown*, 780 So.2d at 540. Manslaughter is a legislatively provided lesser and responsive verdict to second degree murder. La.Code Crim.P. art. 814. Defendant did not timely object to the responsive verdict, and as a result of that failure the State argues, "that verdict cannot be reversed . . . as long as the [S]tate met its burden in relation to the offense charged." The State cited to *State ex. rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983).

This court in *State v. Carmouche*, 12-1052 (La.App. 3 Cir. 4/3/13), 117 So.3d 136, held that there was sufficient evidence to support a conviction of a defendant charged with second degree murder, who was found guilty of the responsive verdict of manslaughter at trial. The court reasoned that while there were discrepencies, "the evidence at trial supported the verdict of manslaughter because it could have sustained a verdict for second degree murder." *Id.* at 145.

As in the *Carmouche* case, there is enough evidence in this case, to support a verdict of second degree murder. Defendant was the last person seen with the victim, and the murder weapon, a gun, belonged to Defendant's girlfriend, which he testified he took without her knowledge. Further, the victim's keys were found under Defendant's bed, and the victim's vehicle was found a block from Defendant's home. Even against Defendant's testimony that he was not the

9

shooter, there is enough evidence to support a verdict of second degree murder and the responsive verdict of manslaughter beyond a reasonable doubt.

We find that the Defendant's assignment of error that the evidence at trial was insufficient to convict him is without merit. Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICAITON. Uniform Rules—Courts of Appeal. Rule 2–16.3.