871 So.2d 483 (2004)
STATE of Louisiana
v.
David ALEXANDER.
No. 03-KA-1291.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*485 Jennifer Pate, Louisiana Appellate Project, Baton Rouge, LA, for Appellant.
John M. Crum, Jr., District Attorney, 40th Judicial District Court, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
The Defendant, David Alexander, appeals from his conviction of being a principal to a armed robbery and his sentence to 25 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
The District Attorney for the Parish of St. John the Baptist filed a bill of information charging the Defendant with armed robbery, in violation of La. R.S. 14:64. The bill was later amended to add the statutory designation for principals, La. R.S. 14:24, and the Defendant was rearraigned. The Defendant pled not guilty on both occasions.[1]
On October 22, 2002, the Defendant proceeded to trial before a 12 person jury, which found him guilty as charged. On January 8, 2003, the trial judge denied the Defendant's motions for a new trial and post-verdict judgment of acquittal. On July 2, 2003, the trial judge sentenced the Defendant to 25 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Immediately thereafter, the Defendant orally moved for an appeal. On July 9, 2003, the Defendant filed a motion to reconsider sentence, which the trial judge denied on August 25, 2003. The Defendant filed a written motion for appeal that same day and the trial judge granted the motion. The State filed a habitual offender bill of information alleging that he was a second felony offender, which he denied.[2]

*486 FACTS

Just before 10:00 p.m. on September 10, 2001, the victim, Denise Gregoire (Gregoire), was working at the Shell service station on Highway 51 near I-10. She was robbed by a man, whom she later identified as co-defendant, Donald Phillips (Phillips). At trial, Gregoire described the events of that night. She related that a car pulled up to the pump, but no one exited. After a few minutes, a man exited and approached the door of the convenience store. He looked inside and returned to the car. The man exited the car again and entered the store. He picked up a beer from the cooler and placed it on the counter. The man demanded all of the money from the drawer. Gregoire did not believe that he was serious, but the man repeated his demand and showed her a gun beneath his shirt. When Gregoire gave him the money from the drawer, he also demanded the money from the safe. Gregoire told him that it would take a long time to get money from the safe. He then told her to turn around and that he would kill her if she looked at him or the car. Gregoire estimated that the man took $50. The man also took a Miller Lite beer, without paying for it.
At approximately 10:00 p.m., Deputy Scott Maillet of the St. John the Baptist Parish Sheriff's Office was dispatched to the Shell station. Gregoire was very upset and told Deputy Maillet that she had just been robbed by a black male. Gregoire described the robber, the car, and the direction in which he departed. Deputy Maillet related this information to his headquarters, which broadcast the information over the police radio.
Louisiana State Police Trooper Jeremy Mince testified that he was a detective with the St. John the Baptist Parish's Sheriff's Office on September 10, 2001. Trooper Mince was off duty and was driving an unmarked Chevrolet Lumina. He had just entered I-10 from the ramp at U.S. 51 heading toward Kenner, when he heard the call regarding an armed robbery at the Shell station and the description of the vehicle involved. Shortly thereafter, a car sped past Trooper Mince. The officer notified the Sheriff's Office that he might have seen the suspect vehicle, and followed it at rates of speed between 100 and 115 miles per hour. Trooper Mince notified the Louisiana State Police and the Jefferson Parish Sheriff's Office. Several state troopers joined the pursuit and Trooper Mince did not activate his vehicle's police lights until the state troopers activated their lights and siren. According to Trooper Mince, the vehicle attempted to escape when the troopers tried to stop the vehicle. The vehicle was ultimately stopped when several state police units blocked the interstate near the Causeway Boulevard exit.
The Defendant was driving the vehicle and Phillips was in the passenger seat. Gregoire later identified Phillips as the robber. Trooper Mince saw the butt of a gun on the floorboard, protruding from the passenger's seat. There were also two sixteen-ounce Miller Lite beer cans in the car. He removed $69 in cash from Phillips' possession. At trial, Trooper Mince identified the Defendant as the driver of the vehicle.
Detective Sergeant Breaux testified that he retrieved a videotape from the Shell station surveillance recorder, which was entered into evidence and played for the jury. Detective Sergeant Breaux interviewed Phillips, who denied involvement in the robbery.[3]
*487 In its case, the defense called Deputy Maillet and the Defendant. Deputy Maillet was questioned about variations in the description of the suspect's car and the direction it proceeded after the robbery. The Defendant admitted that he had a prior conviction for "auto burglary" in 2000. The Defendant also admitted that, on September 10, 2001, he was driving and Phillips was a passenger. The Defendant explained that he was driving Phillips' car because Phillips was intoxicated. The Defendant said that he and Phillips were on their way back to New Orleans from Baton Rouge when Phillips had asked him to stop so that he could get a beer. The Defendant admitted that he stopped at the Shell station, but denied that he knew Phillips intended to rob the store. The Defendant acknowledged that Phillips had exited the car, returned without a beer, sat in the car, and exited a second time. However, the Defendant said that he did not speak to Phillips and that he was not paying attention to Phillips' multiple entries and exits from the car. The Defendant admitted that he was possibly speeding, but denied that he was driving as fast as Trooper Mince had said. Further, the Defendant said that he pulled over when the police ordered him to do so. He also stated that he first saw the gun after the police removed it from the car. The Defendant denied that Phillips had robbed the store.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
The Defendant argues that the State impermissibly exercised its peremptory challenges to exclude potential jurors based exclusively on their race, and that, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), he is entitled to a new trial. More specifically, the Defendant argues that the trial court erred in accepting the prosecutor's reasons for peremptorily challenging four jurors, Verlena Johnson (Johnson), Cynthia Smith (Smith), Carolyn Bossier (Bossier) and Hermanese Morrison (Morrison),[4] because the race-neutral reasons given were a pretext for discrimination.
When a defendant makes a challenge on the basis that the State has used peremptory challenges in a manner that violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. Batson v. Kentucky, supra. If that showing has been made, the prosecution must offer a race-neutral explanation for striking the juror in question. Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723. Then, the trial court must determine whether the defendant has carried his burden of showing purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1724. It is not until the third step that the persuasiveness of the prosecutor's justification for the challenge becomes relevant. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). In the third stage, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Id.
A trial judge's determination pertaining to purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. Batson, 106 S.Ct. at 1724, n. 21; State v. Taylor, 99-1311 (La.1/17/01), 781 So.2d 1205, 1211, cert. *488 denied, 534 U.S. 844, 122 S.Ct. 106, 151 L.Ed.2d 64 (2001).[5]
In the instant case, the State exercised peremptory challenges to excuse nine prospective jurors from the first panel. Defense counsel objected and made a Batson challenge on the basis that eight of the jurors were black. The trial judge asked the prosecutor to provide race-neutral reasons for challenging the jurors. The prosecutor stated that he challenged Bossier, a black female, because she was a teacher, who would tend to be sympathetic. The prosecutor also stated that she might have a negative feeling toward the State, since the offenders in a crime against her were not prosecuted. The prosecutor also challenged Morrison, a black female, because she was a social worker, who might tend to be sympathetic. He challenged Smith, a black female, because she lived in an area of high crime and because her daughter was a social worker, which might cause her to be sympathetic. Johnson, a black female, was challenged because she lived in an area of high crime, because her husband was unemployed, and because there was no testimony regarding her source of income.
The Defendant noted his objection and stated that the prosecutor had failed to challenge a white teacher, Samantha Usey (Usey). The prosecutor responded that she was a desirable juror because she had previously been on a jury that found a defendant guilty of manslaughter, which off-set the possibility of sympathy that she might have had as a teacher. The Defendant also contended that the prosecutor's reasons for challenging Johnson and Smith were racially discriminatory because the prosecutor based the challenge on the neighborhood in which they lived. Additionally, the Defendant objected to the prosecutor's other reasons in support of the challenge for Johnson. The prosecutor emphasized that he did not say the neighborhood was black, but that it was a high crime neighborhood. Thereafter, the trial judge found that the prosecutor had provided racially neutral valid reasons for the peremptory challenges.
We first note that the trial judge skipped the first step of the three-step Batson analysis when asking the prosecutor to supply an explanation for the State's peremptory challenges. However, a trial judge's demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has presented enough evidence to meet the initial burden in step one. State v. Green, 94-0887 p. 25 (La.5/22/95), 655 So.2d 272, 288. Therefore, whether or not the Defendant established a prima facia showing of racial discrimination is moot. Id.
Responses by the State qualify as race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, (1991); State v. Taylor, 781 So.2d at 1212. The prosecutor's explanations, as set out above, were racially neutral. Thus, the thrust of the Defendant's argument is on the third step.
The Defendant contends that the prosecutor's reason for excusing Bossier was a pretext for discrimination because a white teacher was not excused. Although the State did not exercise a peremptory challenge on Usey, a white teacher, the State explained that any bias she might have had as a teacher was off-set by the fact that she was on a jury that returned a manslaughter verdict. Further, the Louisiana Supreme Court rejected a similar argument in State v. Bridgewater, 00-1529 *489 (La.1/15/02), 823 So.2d 877, 897, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003), where defendant argued that the state engaged in purposeful discrimination by exercising a peremptory challenge on a black juror whose relative had been murdered, but not on white jurors whose relatives were murdered.
Bossier also stated that she was the victim of a hit and run. She said that the perpetrators were located, but were never charged. An explanation that a prospective juror might be biased toward the state under similar circumstances was upheld in State v. Moody, 587 So.2d 183, 186-187 (La.App. 3rd Cir.1991). There, the court found that the prosecutor's reasons were not discriminatory when challenging prospective jurors on the basis of possible prejudice which they might have toward the State for not filing charges against their co-employee for a homicide, and their feelings about that homicide in general.
Next, the Defendant contends that the prosecutor's reasons for challenging Morrison were a pretext for discrimination because the prosecutor said Morrison was a social worker, when the record reflects that she said she was a clerical supervisor for the Department of Social Services. At the beginning of voir dire, Morrison stated that she worked for the Department of Social Services. Later, she said that she was a clerical supervisor for the Department of Social Services. We note that when argument ensued on the Batson challenge, and the prosecutor stated that Morrison was a social worker, the defense did not contradict the prosecutor's statement. Challenges based on prospective jurors' professions have been upheld. See, State v. Duplessy, 03-185 (La.App. 5th Cir.7/29/03), 853 So.2d 77, 82, writ denied, 03-2416 (La.2/6/04), 865 So.2d 739 where denial of a Batson challenge was not an abuse of discretion when prosecutor based his challenge on the prospective juror's occupation as a social worker at Rivarde Juvenile Detention Center, and might feel more biased toward rehabilitation than punishment.
Finally, the Defendant contends that the prosecutor's explanation for challenging Johnson and Smith, because they lived in high crime neighborhoods, was a pretext for discrimination. In State v. Brown, 95-755, pp. 11, 13 (La.App. 1st Cir.6/28/96), 677 So.2d 1057, 1066, 1067, the court found no abuse of the trial court's discretion in accepting the prosecutor's reasons for excluding prospective jurors when the prosecutor provided reasons that included "living in a bad neighborhood" and "being unemployed." (Emphasis in the original).[6]
In State v. Hobley, 98-2460, p. 22 (La.12/15/99), 752 So.2d 771, 784-785, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000), the Supreme Court concluded that the defendant failed to meet his burden of showing purposeful discrimination when the defense did not dispute the explanations (of inattentiveness) given by the prosecutor nor develop a record of evidence contradicting those explanations. The Supreme Court also noted that the state had provided reasons other than inattention when explaining the *490 challenges of other black jurors. The Hobley court pointed out that,
when the prima facie showing was presumed because the state was asked to tender explanations for the challenges, defendant cannot simply rest on a written record and require that we second guess the trial judge's credibility determinations, which are necessarily based on his visual observations.
Id. at 784.
In the present case, the Defendant objected to the prosecutor's explanation for challenging Smith and Johnson on the basis of living in a high crime neighborhood because "that's possibly not a race neutral reason, depending on where they live." However, the Defendant did not dispute that these two jurors did live in a high crime area nor did he make any showing that these neighborhoods were predominately black. Further, the record reflects that the State provided reasons other than residence when explaining the challenges for the other black jurors.[7] The prosecutor did not mention race when providing explanations for challenging Smith or Johnson.[8] We find that the Defendant did not show that the challenges based on residence were a surrogate for race.
A trial judge's determination pertaining to purposeful discrimination rests largely on credibility evaluations and the findings are entitled to great deference by the reviewing court. Batson, 476 U.S. at 98, 106 S.Ct. at 1724, n. 21; State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, 726, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998). The trial judge was in the best position to determine the prosecutor's sincerity in his reasons for challenging the prospective jurors. See, State v. Jackson, 03-0417, p. 6 (La.App. 5th Cir.10/28/03), 860 So.2d 134, 137.[9] Considering the voir dire in its entirety, we find no error in the ruling by the trial court denying the Defendant's Batson challenges and his Motion for New Trial grounded on the Batson argument. These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
The Defendant argues that his sentence is excessive.[10] The Defendant contends that his 25 year sentence without benefit of parole, probation or suspension of sentence is constitutionally excessive because *491 this is his first conviction for a crime of violence, he had minimal participation in the offense, and he was only 33 years old at the time of the offense.
Both the United States and Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The trial judge is afforded wide discretion in determining a sentence and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D); State v. Richmond, 98-1015 at 8, 734 So.2d at 38.
The penalty for armed robbery is imprisonment at hard labor for not less than ten years and not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B).
Before imposing sentence, the trial judge noted his awareness of the pre-sentence investigation report. The judge observed that the Defendant had an extensive arrest record, and that the Defendant would be "at least a third offender." In mitigation, the judge observed that the Defendant did not actually have the weapon. However, the judge recognized that the Defendant was actively involved in the robbery because he drove the "getaway" car. The judge also noted that a weapon was involved and that armed robbery was a serious offense.
The record reflects that the victim was terrified after the robbery. Deputy Maillet testified that the victim was crying and hysterical to the point that Deputy Maillet was concerned that she might need medical attention. Although the Defendant did not wield the gun during the robbery, the evidence reflects the Defendant drove the vehicle that provided a means of escape for Phillips after he had robbed Gregoire with a gun. Further, the evidence also indicates that the Defendant traveled at excessive rates of speed (100 to 115 miles per hour) while Trooper Mince followed the Defendant on I-10. Additionally, Trooper Mince's testimony indicates that the Defendant attempted to evade the officers when they tried to stop his vehicle.
In State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court stated that sentences of 35 to 50 years have been found to be acceptable for first offenders convicted of armed robbery, citing State v. Augustine, 555 So.2d 1331, 1332 (La.1990), and State v. Thomas, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50. Based on the trial judge's remarks and the pre-sentence investigation report that is in the record, the Defendant is not a first offender. However, his 25 year sentence is below the range approved for first offenders convicted of armed robbery.
When reviewing a sentence on appeal, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2, (La.10/12/01), 799 So.2d 461, 462. Armed robbery is a serious offense against the person. See, State v. Francois, 01-807, p. 5 (La.App. 5th Cir.4/10/02), 817 So.2d 213, 216. Considering the circumstances surrounding the robbery and that this sentence is actually below the range approved by the Louisiana Supreme Court for first offenders who have committed armed robbery, we do not *492 find that the imposed sentence is constitutionally excessive. This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The following error is noted.
The record reflects that the trial court failed to properly advise the Defendant of the prescriptive period for filing for postconviction relief pursuant to La.C.Cr.P. art. 930.8 in that the trial judge failed to indicate when the period began to run. Rather, it was simply stated that the Defendant had a "two year prescriptive period in which to file for post-conviction relief." Therefore, we remand the case and order the district court to inform the Defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this Court's opinion and to file written proof in the record that the Defendant received the notice. See, State v. Ledesma, 01-1413, p. 8 (La.App. 5th Cir.4/30/02), 817 So.2d 390, 394-395.
Accordingly, for the reasons stated above, the Defendant's conviction for armed robbery and his sentence to 25 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence are affirmed. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate notice, under La. C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED
NOTES
[1] Co-defendant, Donald Phillips, was charged with armed robbery and with being a felon in possession of a firearm, but according to a motion filed by the Defendant, he died before he was tried.
[2] The record does not reflect whether the Defendant stipulated to the bill of information, a hearing was held, or the Defendant received a habitual offender enhanced sentence.
[3] The State also presented the testimony of Lieutenant Harry Troxlair, who testified about the chain of custody of the gun, clip, and the beer cans.
[4] Defense counsel refers to Morrison's first name as "Carolyn" in his brief, but the record reflects that her first name was Hermanese.
[5] See also, La.C.Cr.P. Art. 795.
[6] We note that a prospective juror's residence in a "high crime" neighborhood is included among the list of acceptable reasons for exercising peremptory strikes in the State of Mississippi. See, Baldwin v. State, 784 So.2d 148, 155 (Miss.2001). "Acceptable reasons include but are not limited to, living in a `high crime' area, body language, demeanor, prosecutor's distrust of the juror, inconsistency between oral responses and juror's card, criminal history of juror or a relative, including driving under the influence (DUI), social work and other types of employment, and religious beliefs."
[7] The prosecutor explained the challenge of Heather Wilson, a black female, because she was a teacher, who would tend to be sympathetic, and because her brother was charged with a crime and was awaiting trial. The prosecutor challenged Wondell Wesley, a black male, because he admitted that he was convicted of flight from an officer. Betty Tucker, a black female, was challenged because her son was in jail and her brother was in jail for armed robbery. Shelia Foster, a black female, was challenged because she had a relative who was convicted of armed robbery and because she worked for the school board and might be sympathetic.
[8] Compare, State v. Harris, 01-408, pp. 6-8 (La.6/21/02), 820 So.2d 471, 474-476, which held that the State's explanation for excluding a prospective juror based on living near the crime was a pretext for race, where the prosecutor first said that the prospective juror should be excluded because he was "the only single black male on the panel with no children."
[9] A writ was filed with the Louisiana Supreme Court on December 22, 2003 (No. 2003-KO-3506). As of the date of the writing of this memorandum, there has been no action.
[10] Although the State has filed a habitual offender bill of information against this Defendant, we have no information indicating that the Defendant has been re-sentenced. Therefore, we will consider the assignment of error. State v. Gilbert, 99-2338 (La.2/4/00), 758 So.2d 779.