# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1304


STATE OF LOUISIANA

VERSUS

JERMAINE PERRY

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 274948
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.


**AFFIRMED WITH INSTRUCTIONS.**


James C. Downs
District Attorney - 9th Judicial District Court
Monique Yvette Metoyer
Assistant District Attorney - 9th Judicial District Court
P. O. Drawer 1472
Alexandria, LA 71309
Telephone: (318) 473-6650
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana


Timothy D. Shumate
The Shumate Law Firm, LLC
4501-A Jackson Street Extension
Alexandria, LA 71303
Telephone: (318) 623-6655
COUNSEL FOR:
    Defendant/Appellant - Jermaine Perry

**Jermaine Perry**
**F.W.C.C. (East Max C-2)**
**7990 Caddo Drive**
**Keithville, LA 71047**

**THIBODEAUX, Chief Judge.**

The Defendant, Jermaine Perry, appeals his convictions and sentences of armed robbery and conspiracy to commit armed robbery. We affirm.

## ISSUES

We shall consider whether:

(1)    the evidence was sufficient to prove guilt beyond a reasonable doubt;

(2)    a *Daubert* hearing should have been conducted on the shirt and footprints; and,

(3)    the Defendant's concurrent sentences of twenty-five years at hard labor for armed robbery and ten years at hard labor for conspiracy to commit armed robbery are excessive.

## LAW AND DISCUSSION

### A.  Sufficiency of the Evidence

#### *Armed Robbery*

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Freeman,* 01-997, p. 3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore:

> In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Johnson*, 00-1552 (La.App. 5 Cir. 3/28/01) 783 So.2d 520, 527, *writ denied*, 01-1190 (La.3/22/02), 811 So.2d 921. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* The credibility of the witnesses will not be re-weighed on appeal. *Id.*

*State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936.

The Defendant was convicted of armed robbery and conspiracy to commit armed robbery. Armed robbery is defined in La.R.S. 14:64(A), as follows:

> Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Criminal conspiracy is defined in La.R.S. 14:26(A), as follows:

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
>
> If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.

At approximately 1:30 a.m. on July 28, 2004, two employees of the Sonic Drive-In located on McArthur Drive in Alexandria, Louisiana, were robbed as they approached their vehicles. Shania "Pepper" Garner (Pepper), an assistant manager, and Chris Warner, a management-trainee, had just exited the building, and as they separated and walked to their vehicles, two men appeared from the trash

dumpster area and began demanding money.  According to Pepper and Chris, the men were in possession of one or more guns.

The males approached Chris first, demanding money and ordering him to the ground.  He dropped his work uniform items he had been carrying, as well as the red- or pink-colored "slushie" drink he held.  As Chris was forced to the ground, he told the men that he did not have any money but Pepper did.  One of the males pressed Chris' forehead into the concrete and put his knee in his back, while the other male ran towards Pepper.  The man on Chris' back knew Chris' name even though he wasn't wearing a name tag.  The man told him, "Chris, do not move, we'll shoot you."

Pepper was carrying about $1,500.00 in a money bag that she was going to deposit that night.  As she handed the money bag to the male who approached her, he struck her in the head with a gun.  She fell to the ground, and the men ran.  Chris lay on the ground and watched as the men ran.  When they left, he ran to assist Pepper who was bleeding from a wound to her forehead.  He also called 911.

Neither Chris nor Pepper saw the faces of the men who robbed them.  Chris stated that he believed the men's faces were obscured by white t-shirts tied around them.  Pepper said the men were both wearing hats.  Pepper stated that the man who hit her with the gun and took the money from her was the shorter, stockier individual.  She also testified that one of the men's voices sounded familiar to her, although she could not identify the voice.

The Defendant, Jermaine Perry, was detained and ultimately arrested within a few hours after the robbery in front of Eddie's Barbecue, which was near McArthur Drive in the vicinity of the Sonic Drive-In.  The Defendant was wearing a white t-shirt that contained pink spots or stains on it.  His cousin and co-conspirator,

3

Travis Sewell, had been detained nearby as well. Sewell was found on the other side of McArthur Drive, sitting in the driver's seat of a Chevrolet Suburban owned by a friend of the Defendant's family. The Defendant's wallet and identification were located in the vehicle. The vehicle was found parked very closely behind the business, the Weiner Works.

Sewell testified against the Defendant. He stated that he and the Defendant drove the Suburban and parked behind the Weiner Works so they could watch the Sonic Drive-In and determine if it was feasible to commit the robbery. Sewell, who had worked for the Sonic Drive-In for about three years, knew that night deposits were typically made after closing at approximately 1:30 a.m. or 2:00 a.m. He testified that he waited in the Suburban while the Defendant got out of the vehicle to take a closer look. He denied knowing that the Defendant would commit the robbery that morning and denied participating in the robbery. He claimed to have fallen asleep in the Suburban while waiting for the Defendant to return.

When initially detained, the Defendant gave a false name to the officer questioning him, but when confronted with his identification that had been found in the Suburban, he provided his correct name. He admitted that he and Sewell had parked the Suburban and were watching the Sonic Drive-In, waiting for it to close; however, he claimed that he witnessed other men rob the employees that night.

Melanie Bordelon, an employee of the Ramada Inn located across the street from the Sonic Drive-In, later identified the Defendant from a single photograph and then at trial, as someone who entered the lobby of the hotel, acting suspiciously, shortly after the robbery occurred. She testified that he entered the lobby, dripping with sweat and stating that he wanted to use the ATM machine. He was in the lobby for two to three minutes and watched the police across the street,

4

making inquiring comments about what the police were possibly doing. She claims the Defendant left the lobby within seconds of her calling a security guard to the lobby area. The Defendant attempted to re-enter the lobby soon after, but was unable to because Ms. Bordelon had locked the doors.

Photographs of impressions of footprints in the grass leading away from the Sonic Drive-In were taken by investigating officer, Sergeant Bates, in the hours following the robbery. He testified that the footprint impressions shared "similar class characteristics" with shoes being worn by the Defendant when he was apprehended on the night of the robbery. The money taken during the robbery, the money bag, and any weapons that may have been used were never located.

The evidence clearly establishes all the elements of armed robbery. At trial, Pepper testified that she and Chris were leaving Sonic Drive-In when they were approached by two individuals. One individual instructed Chris to get down on the ground, and the other ordered her to hand over the money, which amounted to about $1,500.00. Pepper testified that after she handed over the bag of money the individual hit her on the head with a gun. The pictures taken by the investigating officer show Pepper bleeding profusely and depict a gash on her forehead about an inch and a half long. Additionally, Chris stated that he also saw a gun during the robbery. Because the sole testimony of the victims is sufficient under *Jackson* to establish the elements of the crime, the victim's testimony proved, beyond a reasonable doubt, that an armed robbery occurred. Thus, the real issue before this court is whether the evidence is sufficient to link the Defendant to the armed robbery at Sonic Drive-In.

> When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable

5

doubt. *State v. Bright*, 1998-0398 (La. 4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). However, the touchstone of *Jackson v. Virginia* is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. *State v. Hampton*, 98-0331 (La. 4/23/99); 750 So.2d 867, 880.

*State v. Bedou*, 07-1395, p. 11 (La.App. 4 Cir. 5/14/08), 985 So.2d 821, 827 (quoting

*State v. Holmes*, 05-1248, pp. 8-9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162).

In this case, the victims could not identify the robbers but did give a physical description. Pepper testified that the robber with a gun was about her height or a little bit taller and of stocky build. Chris testified that one robber was shorter and stockier than him, and the other was taller and skinnier. The record reflects the Defendant was heavier than his co-conspirator. The jury had an opportunity to view the two men standing side-by-side and were able to make this comparison as well.

The record also reveals that both the Defendant and his co-conspirator admitted planning to rob the Sonic Drive-In on McArthur Drive. In particular, the Defendant told Officer Vickers that they planned to rob Sonic Drive-In the next night but some other men beat them to it. The co-conspirator also testified that he and the Defendant had previously discussed robbing Sonic Drive-In, and they were in the area that night to determine whether the robbery was feasible. The Defendant and his co-conspirator were found in the immediate vicinity of Sonic Drive-In and within a couple of hours after the robbery.

Pink stains were on the shirt and shorts worn by the Defendant when he was arrested. When the robbers approached Chris, he dropped a light pink/red colored drink. The jury was presented with the Defendant's shirt at trial and testimony from several officers indicated that the shirt contained some pink stains. Photos also show pink stains on the Defendant's shorts. The co-conspirator testified that the stains on the Defendant's clothing came from a wine cooler that he spilled some days before the robbery.

One of the robbers was the co-conspirator. The record reveals that one robber called Chris by his name, despite his name tag being hidden. This evidence suggests that the robber knew Chris before the night of the robbery. The co-conspirator worked at Sonic Drive-In six to seven months prior to the robbery.

Lastly, trial testimony indicated that footprints found near the scene of the crime were shown to have some common characteristics with the shoe impressions collected from both the Defendant and the co-conspirator. The footprints were found in the general area where the robbers reportedly ran after the robbery.

Although no gun or money was produced, based on the foregoing evidence, we find that the identity of the Defendant was proven by circumstantial evidence. Both the Defendant and co-conspirator admitted planning to rob Sonic Drive-In. They were found in the immediate vicinity of Sonic Drive-In and within a couple hours after the robbery. Pink stains were found on the Defendant's clothing. One robber called Chris by his name despite the fact he was not wearing his name tag nor was it visible. The co-conspirator worked at Sonic Drive-In six to seven months prior to the robbery. Footprints found near the crime scene were similar to the shoe impressions taken from the shoes of the Defendant and the co-conspirator. The jury heard the testimony and weighed the evidence. Thus, viewed in a light most

favorable to the prosecution, a rational jury could have found that the identification of the Defendant was proven by circumstantial evidence.

### *Conspiracy to Commit Armed Robbery*

The State bears the burden of proving beyond a reasonable doubt that the Defendant conspired to commit armed robbery and that either the Defendant or the co-conspirator acted in furtherance of committing the armed robbery.

The Defendant contends that there is no direct or circumstantial evidence of a conspiracy between the Defendant and the co-conspirator and sets forth several grounds in support of this contention. First, the Defendant argues that "there was never any fixed terms as to what they were going to do at Sonic and how" and argues that the meeting near Sonic Drive-In was not an "act in furtherance." Second, the Defendant asserts that he and the co-conspirator "never discussed robbing the Sonic Drive-In at gunpoint." Finally, he asserts the co-conspirator testified that they "never agreed to rob anything and that they merely discussed if it was feasible."

The Defendant's conspiracy charge stemmed from the comments he made to Officer Vickers. In particular, the Defendant told Officer Vickers that he and his cousin were waiting across the street to see what time Sonic Drive-In closed. He also told Officer Vickers that they were watching Sonic Drive-In because they planned to rob it the next night but some other men beat them to it. Officer Vickers's testimony was corroborated by the testimony of the co-conspirator.

The co-conspirator testified that he and the Defendant had previously discussed robbing Sonic Drive-In before the night of the robbery, and stated that they probably discussed it that night but did not plan to do it then. The co-conspirator also testified that he used to work at Sonic Drive-In and that the robbery was his idea. Because the co-conspirator was once employed at Sonic Drive-In, he also knew what

8

time it closed and when the managers would be leaving with the night deposit. Thus, the first element of conspiracy is satisfied.

With respect to the second element, the "act in furtherance," we find that the evidence was sufficient to sustain the conviction of armed robbery. Thus, "[p]erpetration of the actual crime is certainly an act in furtherance of the object of the agreement." *State v. Zeno*, 99-69, p. 9 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, 706. Accordingly, we find that the evidence is sufficient to sustain the Defendant's conviction of conspiracy to commit armed robbery.

### *Daubert Hearing*

The Defendant challenges the admissibility of certain testimony and contends that the trial court erred by its failure to hold a *Daubert* hearing.

> In *State v. Foret*, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La. 5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592-594, 113 S.Ct. 2786, 125 L.Ed.2d 469. In *Foret,* supra, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. *Id.* Thus, Louisiana has adopted *Daubert's* requirement that in order for technical or scientific expert testimony to be admissible under La. C.E. Art. 702, the scientific evidence must rise to a threshold level of reliability. *Daubert's* general "gatekeeping" applies not

only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La. 2/29/00), 755 So.2d 226. The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id.* Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho, supra* at 526 U.S. 142, 119 S.Ct. 1167, 143 L.Ed.2d 238.

*State v. Brannon*, 07-431, pp. 8-9 (La.App. 3 Cir. 12/5/07), 971 So.2d 511, 517-18, *writ denied*, 07-2465 (La. 5/9/08), 980 So.2d 689 (quoting *State v. Allen*, 41,548, pp. 11-13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254-55).

First, the Defendant contends that a *Daubert* hearing should have been held regarding "[t]he chemical make[-]up of the drink used at Sonic because Sergeant Claude Russell testified that he had no idea where the yellow and pink stains on [the Defendant's] shirt came from." Second, the Defendant contends that a *Daubert* hearing should have been held regarding the footprints found near the crime scene because "the investigator's [sic] arbitrarily disregarded some prints in favor of other prints." The Defendant further contends that "[i]t is a violation of Due [P]rocess to deny a [*Daubert*] hearing even when one was not initially requested because of the sixth amendment right to present a defense." This contention, however, is not supported by Louisiana jurisprudence.

The factual basis for an expert opinion determines the credibility of the testimony. It is the responsibility of the opposing party to explore the factual basis for the opinion and thus determine its reliability, *Leard v. Schenker,* 06-1116, p. 3 (La.App. 1st Cir. 6/16/06), 931 So.2d 355, 357, *citing Miramon v. Bradley*, 96-1872, p. 6 (La.App. 1st Cir. 9/23/97), 701 So.2d 475, 478. Thus, the failure to raise an objection to the admissibility and reliability of expert testimony constitutes a waiver of such

an objection. La. C.E. art. 103(A)(1); *Everhardt v. La. Dep't of Transp. & Dev.*, 07-0981, p. 11 (La.App. 4th Cir. 2/20/08), 978 So.2d 1036, 1046. A contemporaneous objection to the disputed evidence must be entered on the trial record in order to preserve the objection for appellate review. Furthermore, when the objecting party fails to request an evidentiary "gatekeeping" hearing under the rationale of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), his objections to the admissibility of an expert witness's testimony under *Daubert* are not preserved for appeal. *Brown v. Schwegmann,* 05-0830, pp. 5-6 (La.App. 4th Cir. 4/25/07), 958 So.2d 721, 724, *writ denied,* 07-1094 (La. 9/21/07), 964 So.2d 333.

*Harris v. State ex rel. Dep't of Transp. and Dev.*, 07-1566, pp. 28-29 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 868, *writ denied*, 08-2886 (La. 2/6/09), 999 So.2d 785.

Accordingly, the Defendant's failure to make a contemporaneous objection or move for a *Daubert* hearing results in a waiver of those issues on appeal. *See also* La.Code Crim.P. art. 841. Additionally, there was no need for a *Daubert* hearing regarding the chemical make-up of the pink stains found on the t-shirt allegedly worn by the Defendant, as Officer Bates explained that a chemical analysis could not be conducted. Likewise, there was no "gatekeeping" issue regarding the footprints. The only issue preserved for appeal was the Defendant's objection to the qualifications of Officer Bates to testify regarding the similarities between the Defendant's shoe and the footprints found near the crime scene. This issue, however, has not been argued on appeal.

Next, the Defendant contends that, under La.Code Crim.P. art. 770, "[t]he testimony of Officer Kelly Vicker[s] permitted inflammatory remarks pertaining to the defendant's conduct on the night in question which included the crime of misrepresenting who he was[,] and[,] therefore[,] the remarks should have never been used or stricken."

Louisiana Code of Criminal Procedure Article 770 provides, in relevant

part:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> > (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
> >
> > (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]

At trial, Officer Vickers testified that when she made contact with the Defendant he initially gave her the wrong name. When she showed him the identification she found in the Suburban, he stated that "she had him" and his name was Jermaine Perry. The Defendant argues that her testimony "included the crime of misrepresenting who he was[,] and[,] therefore[,] the remarks should have been stricken." He further asserts that her testimony was "inflammatory and confusing toward a jury." However, defense counsel failed to object to Officer Vickers' testimony at trial. Thus, this issue was not properly preserved for appellate review. La.Code Crim.P. art. 841.

**Excessiveness of the Sentences**

The Defendant contends that his concurrent sentences of twenty-five and ten years at hard labor were unconstitutionally excessive. The Defendant does not specifically challenge his ten-year sentence for the conviction of conspiracy to commit armed robbery and, instead, urges this court to impose a sentence of ten years, which is the statutory minimum for conviction of armed robbery.

12

The Defendant asserts that "imprisonment beyond the minimum concurrent sentence would be an excessive hardship on his pregnant fiancé and three children and that [he] would respond well to the minimum sentence of ten years." Additionally, the jurisprudence cited by the Defendant relates only to sentences imposed for convictions of armed robbery. Thus, the Defendant's complaint regarding his sentence for conspiracy was abandoned, and the following discussion will address only the sentence imposed for the Defendant's armed robbery conviction.

A motion to reconsider sentence was not filed by the Defendant in this matter. Because the Defendant failed to comply with La.Code Crim.P. art. 881.1, our review is relegated to a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (alteration in original).

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The penalty for a violation of La.R.S. 14:64 is imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. Thus, the Defendant's sentence of twenty-five years is in the lower one-fourth of the statutory sentencing range.

When sentencing the Defendant in this case, the trial court made the following comments:

> All right. Mr. Perry, I remember this case very well, it was the Armed Robbery of the Sonic Drive in, where you and a co-defendant waited until the store closed. Y'all waited in the back by where the garbage is, and when the manager and the assistant manager were leaving -- I believe that's who they were. I know one of them was the manager. I don't know if it was just an employee or an assistant manager, I assume that's who it was -- were

14

leaving; you and the co-defendant, approached both of them. You went to where the female was that you robbed, you had a gun, you took the money from her and after you took the money from her, you hit her in the head for no reason at all with the gun, causing her an injury, which caused her to be transferred to the hospital. That is the thing that -- of course, it's bad enough to rob somebody, it's bad enough to rob somebody with a gun, but the thing that was absolutely unnecessary in this case, is that you hit the woman with a gun. So, I am -- I've been reviewing the sentencing factors under Article 894.1.

I find that there is an undue risk, during a period of suspended sentence or probation, that you will commit another crime. I believe that you're in need of correctional treatment or custodial environment that can be provided most effectively by your commitment to an institution. I believe a lessor [sic] sentence will depricate [sic] the seriousness of this charge.

. . . .

I have looked at the aggravating factors; aggravating factor number one, is your conduct during the commission of the offense manifested, [sic] deliberate cruelty to the victim. You knowingly created a risk of death, or great bodily harm to more than one person. You used threats of or actual violence in the commission of this offense. The offender used a dangerous weapon in the commission of an offense. The offender used a dangerous firearm, or other dangerous weapons, while committing or attempting to commit an offense which has ss [sic] an element, the use, attempted use, or the threaten [sic] use of physical force against the person or property of another, by which its very nature involves a substantial risk that physical force may be used in the committing of the offense.

. . . .

All right. I have reviewed the mitigating factors. I find that none apply in your case. Mr. Shumate. Do you wish to discuss with the Court any mitigating factors that you think would be appropriate?

Counsel for the Defendant then noted several mitigating factors, as follows:

I respectfully request this Court to take cognizance that my client, at the time of the offense was 20 years old,

11th grade drop out. However, he was employed for approximately two years prior to the actual incident. He has a pregnant fiancé and three children on the way [sic]. So, prior to the incident, he was an actual 20 year old man, who had been employed for sometime with several children.

Your Honor, additionally, although this was a crime of violence, my client does not have a history of perpetuating violence towards other persons. He does have an arrest history, Your Honor, however, he has no prior convictions to date. Since the incident, Your Honor, [h]e has been incarcerated, I believe for more than 9 months. I believe -- I believe a brief nine months, but it's been more than nine months.

In *State v. Joseph*, 07-1567 (La.App. 3 Cir. 4/30/08), 982 So.2d 310, this court upheld a sentence of thirty years imposed on a first felony offender where the victim of the armed robbery sustained serious and permanent bodily injury. In making this determination, this court relied on the following jurisprudence.

"In *State v. Smith*, 01-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court stated that sentences of 35 to 50 years have been found to be acceptable for first offenders convicted of armed robbery, citing *State v. Augustine*, 555 So.2d 1331, 1332 (La.1990), and *State v. Thomas*, 98-1144, p. 2 (La. 10/9/98), 719 So.2d 49, 50." *State v. Alexander*, 03-1291, p. 12 (La.App. 5 Cir. 3/30/04), 871 So.2d 483, 491, *writ denied*, 04-1063 (La. 10/1/04), 883 So.2d 1007.

*Id.* at 315.

In *Smith,* 839 So.2d 1, the defendant used a firearm by aiming it at six persons during the robbery, there was a $400,000 value in stolen items, and the defendant had a prior out-of-state conviction for an offense that was a felony in that state. In *State v. Jefferson*, 40,439 (La.App. 2 Cir. 1/27/06), 920 So.2d 984, a sentence of thirty years at hard labor was affirmed for a first felony offender where a firearm was used in the commission of the offense, the defendant showed no remorse, and the trial court considered the impact on the victims. In *State v. Jackson*,

04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, *writ denied*, 05-1740 (La. 2/10/06), 924 So.2d 162, the court upheld a sixty-year sentence imposed for two convictions of armed robbery where the eighteen-year-old first felony offender pointed a gun in the victim's face, leaving the victim so terrified that she fell on the floor crying when the robbers left.

The *Jackson* court also took note of the following cases:

> In *State v. Lewis*, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702, the defendant, a first felony offender, received three concurrent 20 year sentences for the armed robbery of three employees at a bank. The defendant was armed with a BB gun.

> In *State v. Roddy*, 33,112 (La.App. 2 Cir. 4/7/00), 756 So.2d 1272, *writ denied*, 00-1427 (La. 5/11/01), 791 So.2d 1288, a 22-year-old first felony offender defendant received a 20 year sentence for armed robbery of a bank. The defendant was a passenger in the getaway car, but was aware of the plan to rob the bank. The presentence report noted the defendant had spent eight months in a juvenile detention center for a prior adjudication for armed robbery.

> In *State v. Square*, 433 So.2d 104 (La.1983), the Louisiana Supreme Court upheld the defendants [sic] 25 year sentence for a bank robbery. The defendant was 22 years old, was gainfully employed, lacked a prior criminal record, and there was an absence of personal injury to the victims of the robbery.

*Id.* at 916-17.

The foregoing jurisprudence suggests that the Defendant's sentence of twenty-five years at hard labor is within the norm for a first-time offender. Here, the Defendant used a gun during the commission of the offense. After he received the money from the victim, he then used the gun to hit her in the head, causing significant injury to the victim's forehead. Considering the nature of the offense, including the danger to life and the purposelessness of the violence against the victim, as well as

17

the sentences imposed for similar crimes, the Defendant's sentence of twenty-five years is not unconstitutionally excessive. Thus, the sentence is affirmed.

## ERRORS PATENT

The transcript of the August 18, 2006 sentencing proceeding reflects that the trial court imposed the Defendant's twenty-five year sentence for armed robbery without the benefit of probation, parole, or suspension of sentence; however, this is not reflected in the court minutes. "[I]t is well settled that when the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Thus, the trial court is instructed to amend the minutes of the August 18, 2006 sentencing to correctly reflect the sentence imposed by the trial court.

## CONCLUSION

The Defendant's convictions and sentences are affirmed. The trial court is instructed to amend the minutes of the August 18, 2006 sentencing to correctly reflect the sentence imposed by the trial court.

**AFFIRMED WITH INSTRUCTIONS.**