NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-879

STATE OF LOUISIANA

VERSUS

JASON ALLEN LOMAX

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 296,207
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.

Saunders, J., dissents with written reasons.

AFFIRMED IN PART; REVERSED IN PART.

James C. "Jam" Downs
District Attorney
Monique Y. Metoyer
Assistant District Attorney
P.O. Drawer 1472
Alexandria, LA 71309
(318) 473-6650
Counsel for Appellee:
    State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
     **Jason Allen Lomax**

**DECUIR, Judge.**

Defendant, Jason Allen Lomax, was convicted of second degree murder, a violation of La.R.S. 14:30.1, and criminal conspiracy to commit second degree murder, violations of La.R.S. 14:30.1 and 14:26. Defendant was sentenced to life imprisonment at hard labor for second degree murder, without benefit of probation, parole, or suspension of sentence. For conspiracy to commit second degree murder, Defendant was sentenced to forty-nine years at hard labor, without benefit of probation, parole, or suspension of sentence. The sentences were ordered to run concurrently. A motion to reconsider sentence was not filed.

Defendant lodged this appeal asserting that the evidence presented at trial was insufficient to convict him of the crimes charged, the trial court erred in failing to remove a juror, and trial counsel was ineffective.

## FACTS

On November 23, 2008, Defendant, along with co-defendant Ashia Brevelle, shot and killed Xavier Tillman.

## ASSIGNMENT OF ERROR NO. 1

By this assignment of error, Defendant argues that the evidence presented at trial was insufficient to find him guilty of second degree murder and conspiracy to commit second degree murder. The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court

should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. *See also State v. Gann*, 07-459 (La.App. 3 Cir. 10/31/07), 969 So.2d 690, *writ denied*, 08-335 (La. 10/31/08), 994 So.2d 528.

**Second Degree Murder**

Second degree murder is defined in La.R.S. 14:30.1(A)(1) as the "killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm . . . ." In the instant case, Defendant challenges only his identity as the perpetrator of the crime. Defendant complains that the testimony of Alton Holmes, who identified him as one of two shooters, formed the sole basis for his conviction and that Holmes' testimony was not credible. Defendant asserts there was no physical evidence corroborating Holmes' version of the events or tying Defendant to the shooting. Additionally, Defendant contends that Holmes' testimony was self-serving and highly suspect; he could be considered an accomplice or co-defendant and there was nothing in the record to show he was ever charged with a crime. Accordingly, Defendant asserts the State must overcome the reasonable hypothesis that Holmes was the shooter.

At trial, Holmes was the only eyewitness to the shooting to identify Defendant as one of two shooters. Holmes, who was fifteen years old at the time of trial, testified that on November 23, 2008, he was riding around with Defendant and Brevelle in a black Avalanche. According to Holmes, they drove by the Good Times

2

Café between 10:00 p.m. and 11:00 p.m. At some time thereafter, Defendant stopped the vehicle on a street near the People's Bank. Defendant and Brevelle, both wearing black hoodies and armed with guns, got out of the vehicle and hid behind some bushes. Holmes remained in the vehicle. The victim, Xavier Tillman, and another man were nearby.

When Defendant and Brevelle saw Tillman, they began shooting toward him. Defendant fired once or twice, and Brevelle fired three or four times. Holmes maintained he was not given a weapon, nor did he fire a weapon. Holmes did not know if Tillman had a gun, but he did not see Tillman fire back at Defendant and Brevelle. When Tillman was hit, he started screaming. The man with Tillman fled the scene. Defendant and Brevelle returned to the vehicle, and the three left the scene. Defendant dropped Holmes off at his girlfriend's house. Holmes did not know what happened to the guns after the shooting.

Jerome Boyd, the man with Tillman at the time of the shooting, did not identify Defendant as one of the shooters. Boyd testified that after leaving the Good Times Café, he met up with Tillman at 3:00 a.m. in front of the pool hall across the street from the club. The two men walked to Tillman's truck to leave, and when Boyd opened the door, he saw about six people wearing black in the nearby bushes. When shots were fired, Boyd took off running and ran to a nearby store.

Kendora Clovis was in front of the pool hall at the time of shooting and confirmed that Holmes was riding around with Defendant and Brevelle prior to the shooting. Clovis, however, maintained she did not see who fired the shots. Clovis testified that around 12:00 to 1:00 a.m., she was with several people in front of the pool hall when she saw Defendant, the father of one of her three children, pass by in

3

his truck, a black Avalanche. According to Clovis, Brevelle and Holmes were also in the truck. About ten to fifteen minutes later, she heard gunshots but denied seeing who fired the shots. Clovis could not recall how many shots she heard because she was "really intoxicated that night."

Clovis testified she was one of the last people to leave the scene after the shooting. According to Clovis, she called Defendant after the shooting, told him what had happened, and then met up with him at the Red River Inn. When she arrived, Brevelle and Holmes were there, too, along with another girl. At some time the next morning, Clovis left with Defendant and went to a lady's home in Martin Park. Clovis was with Defendant, Brevelle, and Holmes when they were stopped by the police in Martin Park.

In *State v. Jones*, 02-1176, p. 13 (La.App. 3 Cir. 2/5/03), 839 So.2d 439, 446-47, *writ denied*, 03-886 (La. 11/7/03), 857 So.2d 516, this court stated as follows:

> The Louisiana Supreme Court in *State v. Neal*, 00-0674 (La.6/29/01); 796 So.2d 649, stated:
>
> > As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. See *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir. 10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12. . . . The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the

4

> fundamental due process of law." *Mussall*, 523 So.2d at 1310 (La.1988).

*Id*. at p. 11, 658.

*See also State v. Hood*, 04-666 (La.App. 3 Cir. 2/16/05), 895 So.2d 624, 628, *writ denied*, 05-1432 (La. 2/17/06), 924 So.2d 1006.

In the instant case, the State did "negate any reasonable probability of misidentification" with the positive identification of Defendant by Holmes, an eyewitness to the shooting. Although there was no physical evidence linking Defendant to the shooting, the positive identification by Holmes is sufficient evidence to support a conviction. Also, there was no evidence to suggest that Holmes fired a gun or caused Tillman's death. Thus, it was not unreasonable for the jury to conclude that Defendant was the perpetrator of the offense.

Further, in making its credibility determination, the jury was apprised of Holmes' young age at the time of the offense and at trial, the fact that he was never charged with an offense, and that he had a juvenile criminal history – a principal to robbery.

Defendant complains that an inconsistency exists between Holmes' testimony wherein he states that the shooting took place between 10:00 and 11:00 p.m., whereas Corporal Randy Lachney stated he received a call about the shooting at 3:00 a.m. Holmes' testimony, however, does not indicate that the shooting took place between 10:00 and 11:00 p.m. Holmes stated that they drove by the Good Times Café about 10:00 or 11:00 p.m. He was never asked how much time passed between the time they drove by Good Times Café and when they stopped just prior to the shooting. Thus, an accurate time of the shooting per Holmes was not established. Also, Clovis' testimony indicates that the shooting occurred some time around 12:00 or 1:00 a.m.

The testimony of Detective Cedric Green with the Alexandria Police Department, however, does confirm Corporal Lachney's testimony that the dispatch call came in about 3:00 a.m.

Even if a discrepancy, in fact, exists regarding the time of the shooting, considering the evidence and testimony presented at trial, a rational trier of fact could have found that Defendant was a perpetrator. Accordingly, this assignment of error has no merit.

**Conspiracy**

As noted by this court in *State v. Taylor*, 96-1043, p. 8 (La.App. 3 Cir. 2/5/97), 688 So.2d 1262, 1268-69:

> The elements of the crime of conspiracy are (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. La.R.S. 14:26. An overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. An essential element of the crime of conspiracy is specific intent. Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact.
>
> *State v. Guillory*, 540 So.2d 1212, 1215 (La.App. 3 Cir.1989) (citations omitted).
>
> The legal foundation of a conspiracy conviction is the combination of at least two minds for an unlawful purpose. *State v. D'Ingianni*, 217 La. 945, 47 So.2d 731 (La.1950); *State v. Joles*, 485 So.2d 212 (La.App. 2 Cir. 1986). Also, the elements of the crime of conspiracy can be proven by either direct or circumstantial evidence, even if a defendant has been charged for a completed offense. *State v. Evins*, 626 So.2d 480 (La.App. 3 Cir. 1993).

6

At trial, the State did not produce any direct evidence of conspiracy to commit second degree murder. When Holmes was asked if Defendant and Brevelle discussed the shooting with him or in his presence prior to the commission of the offense, he replied, "Nah, they just said, there you go," and then Defendant and Brevelle proceeded with the commission of the offense as previously described. According to Holmes, the only conversation had regarding the offense was afterwards, when Defendant and Brevelle told him not to say anything about the shooting. Clovis, the only other witness to the shooting, testified that Defendant did not discuss the shooting with her either before or after the offense.

The trial court confirmed at trial that co-defendant Brevelle pled guilty on October 21, 2009, to manslaughter and was sentenced to forty years on November 30, 2009. As part of her plea agreement, she agreed to testify truthfully against Defendant. On the day of trial, however, Brevelle refused to testify.

Although this court has held that the perpetration of the actual crime is an act in furtherance of the object of the agreement, there is no evidence, either direct or circumstantial, to show that an agreement existed between Defendant and Brevelle. *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352. Accordingly, the criminal act alone, committed by both Defendant and Brevelle, is not sufficient evidence to support Defendant's conviction for conspiracy to commit second degree murder.

## ASSIGNMENT OF ERROR NO. 2

By this assignment of error, Defendant argues that the trial court erred in failing to remove juror Stacy Jenkins. Defendant complains that on the third day of

7

trial, bailiff Wilbert Weekly informed the court that he personally observed Jenkins speaking with Sharon Holmes, the mother of Alton Holmes, on the elevator.

In support of this claim that Jenkins should have been removed, Defendant refers to *State v. Charles*, 377 So.2d 344, 345 (La.1979), wherein the supreme court stated:

> In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. *State v. Wisham*, 371 So.2d 1151, 1153 (La.1979); *State v. Marchand*, 362 So.2d 1090, 1092 (La.1978); *Remmer v. U. S.*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954).

The record reflects that on the morning of the third day of trial, before the jury was seated, bailiff Weekly requested permission to approach the bench, and a conversation was conducted with the trial court off the record. Afterwards, the trial court called juror Jenkins into the court room and informed her that she was seen talking to Ms. Holmes or that Ms. Holmes was seen talking to her on the elevator that morning. When the trial court asked Jenkins if she knew Ms. Holmes, Jenkins responded, "Um, kind of sort or, um, from like in the neighborhood . . . When we was younger." When asked if she realized that Ms. Holmes was a witness, Jenkins responded, "No." According to Jenkins, Ms. Holmes asked her if she had anything on her face because she was running late that morning. Ms. Holmes also told Jenkins that she was scared to testify and face Defendant. Jenkins denied saying anything to Ms. Holmes.

Once trial was resumed, Weekly was questioned about what he heard in the elevator that morning. Weekly stated that he heard Jenkins and Ms. Holmes have a casual conversation. He added, however, that he did not hear them say anything about the case. When Weekly learned that Ms. Holmes was going to testify, he

8

located her in the witness room and asked her about the conversation she had with Jenkins. Ms. Holmes advised Weekly that she had known Jenkins for a number of years, and they were from the same neighborhood. Ms. Holmes also informed Weekly that Jenkins assured her that Jenkins knew her son was a good boy and was not involved in anything like this.

After the trial court clarified with the parties that Ms. Holmes was the mother of the State's witness, Alton Holmes, not Defendant's mother, and that the alleged conversation involved Alton Holmes, not Defendant, defense counsel then asked that Jenkins be removed from the jury. The State requested that Jenkins be questioned first, and the trial court agreed.

When questioned, Jenkins maintained she did not discuss the case or her son's involvement in the case with Ms. Holmes. According to Jenkins, she was in the elevator for a brief time as she was trying to hurry to get to trial. Jenkins asserted that Ms. Holmes' statement regarding their conversation was not true and confirmed it was just a conversation about something on Ms. Holmes' face and being nervous in court. The trial court subsequently ruled that Jenkins would remain on the jury, and defense counsel objected.

Next, the trial court questioned Ms. Holmes. Ms. Holmes acknowledged knowing Jenkins but did not recall seeing her on the elevator.

Defense counsel argued that Weekly had no reason to lie about what Ms. Holmes said. If what Ms. Holmes said to Weekly was true, when he attacked the credibility of Alton Holmes, Jenkins would be predisposed to say that Alton Holmes was a good boy. As such, Defendant would be unfairly and unduly prejudiced by

Jenkins' participation on the jury. Defendant's counsel urged that the bulk of the defense was that Alton Holmes was a liar.

The trial court ruled that Jenkins would not be removed from the jury.

On appeal, Defendant argues that he was clearly prejudiced by the conversation between Jenkins and Ms. Holmes because Alton Holmes' testimony was crucial in convicting Defendant. Defendant maintains that the fact that the friendship between Jenkins and Ms. Holmes was not brought up during *voir dire* brings into question the truthfulness of Jenkins' statement. Considering this fact in conjunction with Jenkins' statement to the trial court, which differed from Weekly's statement regarding Ms. Holmes' version of the event, Defendant contends this should have been automatic grounds for removal.

Defendant's reasoning is somewhat faulty. First, neither Jenkins nor Ms. Holmes testified that they were "friends." The record indicates that they were acquaintances, having previously lived in the same neighborhood. Moreover, Ms. Holmes reported to the trial court that she did not know Jenkins well and did not even remember seeing or speaking to her in the elevator that morning. Additionally, Jenkins' statement that she did not discuss the case with Ms. Holmes did not contradict what Weekly heard in the elevator. Weekly testified that it was a casual conversation and that it did not include anything about Alton Holmes. The only inconsistent statements involved were those of Ms. Holmes. Ms. Holmes' statement to Weekly regarding her conversation with Jenkins was totally inconsistent with her testimony at trial, both of which occurred that same morning.

Lastly, Alton Holmes is not the defendant herein and, thus, it was highly unlikely for any relationship between his mother, a potential witness, and Jenkins to

10

have been mentioned or revealed during *voir dire*. Defendant's suggestion that such an omission during *voir dire* was a purposeful act on Jenkins' part to taint the jury is both unconvincing and improbable.

For the reasons stated, Defendant has not shown that the trial court erred in denying his motion to remove Jenkins from the jury and, thus, there is no merit in this assignment of error.

**ASSIGNMENT OF ERROR NO. 3**

In his final assignment of error, Defendant argues that trial counsel on two occasions was ineffective in failing to request a mistrial. In *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701, this court stated:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

In the instant case, Defendant asserts that his trial counsel should have requested a mistrial on two occasions: when the trial court learned that Tillman's father, Derrick Taylor, Sr., threatened Brevelle outside the courtroom and when the trial court allowed Jenkins to remain on the jury.

In *State v. Leger*, 05-11, p. 44 (La. 7/10/06), 936 So.2d 108, 142-43, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007), the supreme court stated:

> Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional

11

norms;  and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

Additionally, in *State v. James*, 95-962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465, this court noted:

> In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984);  *Strickland*, 466 U.S. 668, 104 S.Ct. 2052.

Grounds for a mistrial are set forth in La.Code Crim.P. art. 775, which reads in pertinent part:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with law;  or
>
> (6) False statements of a juror on voir dire prevent a fair trial.

On the second day of trial, Brevelle, the co-defendant, was called to testify pursuant to her plea agreement.  Brevelle took the stand but refused to testify, as discussed above.  Shortly after recessing for the day,  the trial court was informed by the bailiff that Tillman's father, Derrick Taylor, Sr., had threatened Brevelle from the benches where the public sits while Brevelle was on the witness stand.  The trial court

12

went back on the record, instructed Taylor to come forward, asked his name and address, and questioned him about the incident. Counsel for Defendant did not move for a mistrial.

On appeal, Defendant does not argue that Article 775 applies to the above exchange, or allege how and why the above exchange entitles him to a mistrial. The only possible argument would be that Taylor's behavior in court was a legal defect in the proceedings, making any judgment entered upon a verdict reversible as a matter of law. Defendant, however, does not set forth this or a similar claim, nor do we find Taylor's actions in court to be a legal defect as required by Article 775, thereby entitling Defendant to a mistrial. Without grounds for a mistrial, Defendant's trial counsel did not err in failing to request a mistrial at that time. Accordingly, we find no merit in Defendant's argument with regard to Taylor's behavior during trial.

The communication between Jenkins and Ms. Holmes was addressed in assignment of error number two. In the absence of error in the trial court's ruling, Defendant had no basis upon which to be granted a mistrial.

For the reasons stated, we find that Defendant's trial counsel did not provide ineffective assistance of counsel and, thus, there is no merit in this assignment of error.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence for second degree murder are affirmed. His conviction and sentence for conspiracy to commit second degree murder are reversed.

**AFFIRMED IN PART; REVERSED IN PART.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.

13

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-879

STATE OF LOUISIANA

VERSES

JASON ALLEN LOMAX

**SAUNDERS, Judge, dissenting in part**

While I agree with the majority opinion that the second degree murder conviction be affirmed, I do not agree that the conspiracy conviction should be reversed. Defendant and Brevelle conducted a well coordinated plan of attack with movement complementary one to the other. This evidence, combined with the statement "there you go" upon spotting their victim, gives the jury a rational basis for its conviction. No more is needed per *State v. Ordodi*, 06-207 (La. 11/29/06), 946 So.2d 654. Accordingly, I respectfully dissent in part.